<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of those similarly situated, | Civil No. 2:19-cv-01046-KSH-CLW |
| *Plaintiffs*, | |
| v. | |
| NISSAN-INFINITI LT, | |
| *Defendant*. | **OPINION** |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.**   <u>**Introduction**</u>

    Plaintiff Harold M. Hoffman ("Hoffman"), individually and on behalf of those similarly situated, alleges in his complaint that defendant Nissan-Infiniti LT ("NILT") violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A 56:8-2.  Before the Court is NILT's motion to dismiss.  For the reasons set forth below, the Court grants the motion.

**II.**   <u>**Background**</u>

    In May 2015, Hoffman leased a 2015 Infiniti Q50 sedan for a 39-month term from Kings Infiniti, Inc. ("Kings"), an Infiniti dealership located in Brooklyn, New York.  (D.E. 19 ("Second Amended Complaint" or "SAC") ¶ 8.)  Hoffman entered into a written lease agreement with Kings dated May 26, 2015 (the "lease").  (*Id.*; *see also* D.E.

19, Ex. A ("Lease Agreement").)  Kings, as the lessor, assigned its interest in the lease to NILT.  (SAC ¶ 8.)

Section 20 of the lease, entitled "Excessive Wear and Use," states that a lessee may, at the end of the lease term, be "charged for excessive wear based on our standards for normal wear."  (SAC ¶ 9; Lease Agreement, § 20.)  Hoffman alleges that the same lease is used for all vehicles in the State of New Jersey and that neither "excess wear" nor "standards for normal wear" are defined in the contract.  (SAC ¶ 9.)[1]  Hoffman contends that NILT "purposely omits those definitions in order to hide the fact that the lease agreement actually contains a compulsory 'excess wear and tear' payment provision."  (SAC ¶ 9.)  Hoffman therefore argues that the provision was intended to be vague and ambiguous to "induce New Jersey consumers into believing either that (i) Defendant actually has 'standards for normal wear' that apply to lessees who live in the State of New Jersey, or (ii) Defendant's 'standards for normal wear' are objective and reasonable to New Jersey consumers."  (*Id.* ¶ 10.)

Hoffman used the vehicle for the entire lease term and contends that his "use of the vehicle was ordinary[;]…[Hoffman] (i) was not involved in any accidents with the

---

[1] As NILT points out, the lease agreement is not entirely silent on this issue:

> Sec. 20. EXCESSIVE WEAR AND USE. You are responsible for all repairs to this Vehicle that are not the result of normal wear and use.  At the end of the lease term or at early termination, you will pay us either the actual cost of repairs by us that are not the result of normal wear and use or the amount of the true itemized estimate of the cost of such repairs…These repairs include, but are not limited to the costs necessary to: (a) REPAIR: dents, scratches, chips…on the body;…dents, cuts, scratches or gouges in the bumper;…single dents or a series of small dents on other trim parts[.]  (Lease Agreement; D.E. 22-3 ("Moving Brief"), at 7-8.)

vehicle during the lease term, (ii) maintained the vehicle, and (iii) drove the vehicle in and around New Jersey and its surrounding area during the lease term, including in standard winter, spring, summer, and fall weather[.]" (*Id.* ¶ 11.)

The lease concluded, by its terms, in August 2018. (*Id.* ¶ 8.) Hoffman returned the vehicle and NILT purportedly conducted an inspection. (*Id.* ¶ 12.) Hoffman alleges that he was not immediately informed he would be charged for "excessive wear and use" and that, at the conclusion of his lease, "the vehicle had no 'excessive wear and use' by any legitimate standard." (*Id.*)

On September 18, 2018, Hoffman received the "End of Lease Liability Statement" (the "statement"), a bill for $1,194.00 for "excessive wear and use." (*Id.* ¶ 13; *see also* D.E. 19, Ex. B ("End of Lease Liability Statement").) The statement charged Hoffman the following: (1) $375.00 for "hail damage" to the hood of the vehicle's roof; (2) $232.00 for a "previously damaged" rear bumper cover; and (3) $532.00 for "dings." (SAC ¶ 14; End of Lease Liability Statement.)² Hoffman contends that there was no "hail damage, and "even if there was, that [it] is clearly nothing more than ordinary wear and tear on a vehicle that is used, for 3 years, in New Jersey." (SAC ¶ 14.) Hoffman further claims that he never had an issue with the rear bumper, and it was not damaged

---

² An itemized breakdown of the alleged wear and use is contained on the second page of the statement. It lists the following damages and related charges, which Hoffman has aggregated: (1) Ding/Dent (Deck Lid) - $248.00; (2) Hail Damage (Hood) - $175.00; (3) Scratched (Wheel – Left Front) - $55.00; (4) Dent No Paint Damage (Quarter Panel – Right) - $284.00; (5) Previous Damage (Bumper/Cover Rear) - $232.00; and (6) Hail Damage (Roof) - $200.00. (End of Lease Liability Statement.)

during his three-year lease.  (*Id.*)  Finally, Hoffman maintains that the $532.00 charged for dings is "grossly overstated," and even if there were a few dings, it can be attributed to ordinary wear and tear.  (*Id.*)

Hoffman alleges that, "upon information and belief[,]" NILT does not repair leased vehicles upon their return to the dealership for damages "attributable to the arbitrary, bogus and fabricated *excessive wear and use* charges that [NILT] customarily imposes[.]"  (SAC ¶ 21.)  Instead, it sells returned vehicles unrepaired at mass auctions. (*Id.* ¶ 22.)  Hoffman therefore alleges that the "sales price derived by [NILT] for previously leased vehicles at such auctions is not diminished by the…excessive wear and use charges [NILT] imposes on vehicle lessees at the end of lease terms."  (*Id.*)

On October 9, 2018, NILT sent a second statement and indicated it would "take action" if the charges were not paid.  (SAC ¶ 17.)  Hoffman declined to pay the charges and instead filed an action in the Superior Court of New Jersey, Bergen Special Civil Part on October 19, 2018, paying $182.00 in filing fees.  (*Id.* ¶ 18.)

By written notice to Hoffman dated December 5, 2018, NILT waived the $1,194.00 charge. (D.E. 22-2, Soros Declaration, Ex. A ("Renewed End of Lease Liability Statement").)[3]  On December 27, 2018, Hoffman filed an amended class action

---

[3] NILT attached the Renewed End of Lease Liability Statement to its moving brief.  It indicates that, as of December 5, 2018, Hoffman's balance for excessive use and wear charges was $0.00.  (Renewed End of Lease Liability Statement.)  When reviewing a Rule 12(b)(6) motion, the Court may only consider the facts alleged in the pleadings, documents attached thereto as exhibits, and matters of judicial notice.  *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If additional materials outside the pleadings are presented to the Court, and the Court incorporates those

complaint alleging violations of the NJCFA.  (D.E. 1.)  The proposed class "consists of New Jersey lessees of Nissan/Infiniti vehicles, during the six year period preceding the filing of this suit, whose leases concluded with an assessment by [NILT] of arbitrary charges labeled as 'excessive wear and use" of the lease vehicle."  (SAC ¶ 37.)

The case was removed to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA") on January 24, 2019.  28 U.S.C. § 1332(d).  (D.E. 1.)  NILT satisfied the procedural requirements for removal under CAFA:  (1) the purported class consists of more than 100 members; (2) diversity of citizenship exists between at least one plaintiff, Hoffman, and  the defendant, NILT; and (3) the aggregate amount in controversy exceeds $5,000,000.  (D.E. 1.)  *See also*  28 U.S.C. § 1332(d).  NILT filed a motion to dismiss in February 2019 (D.E. 6), but it was terminated after Hoffman sought leave to file a second amended complaint.  (D.E. 12, 13.)  The Court granted Hoffman leave to amend and administratively terminated NILT's initial motion.  (D.E. 16, 18.)[4]  Hoffman filed the second amended complaint ("SAC") on May 8, 2019, which

---

materials into its analysis, the Rule 12(b)(6) motion will be converted, upon notice to the parties, into a summary judgment motion pursuant to Rule 56.  *See* Fed. R. Civ. P. 12(d), 56; *see also Slippi-Mensah v. Mills*, 2016 WL 4820617, at *2 (D.N.J. Sept. 14, 2016) (Hillman, J.).  However, as an exception, courts may consider documents that are "integral to or explicitly relied upon in the complaint…without converting the motion to dismiss into one for summary judgment."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d. Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litg.*, 114 F.3d 1410 (3d. Cir. 1997)).  The Court will consider the renewed statement because an earlier version of it is discussed in and attached to the complaint, it is central to the claim, and its contents are undisputed.

[4] In his brief, Hoffman references Judge Waldor's decision and contends that "the Court specifically rejected NILT's argument…that an amendment would be futile for an alleged failure to allege an ascertainable loss."  (D.E. 25 ("Opposition Brief"), at 13.)  However, at the time Judge Waldor granted leave to amend,  the Court was not in possession of the renewed liability statement indicating that NILT had waived the excess use fee.

alleges five causes of action in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A 56:8-2.  (D.E. 19.)  Hoffman seeks judgment on behalf of himself and members of the proposed class, an order enjoining NILT from pursuing policies, acts, and practices, treble damages together with pre-judgment and post-judgement interest, fees, costs, attorneys' fees, and other relief the Court deems necessary.  (SAC ¶¶ 37-67.) NILT now moves pursuant to 12(b)(6) to dismiss the second amended complaint.  (D.E. 22.)

## III.   Legal Standard

### A.   Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

NILT moves pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true" to state a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is one that permits the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

To determine whether a plaintiff has met the facial plausibility standard mandated, courts engage in a three-step process.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "outline the elements a plaintiff must plead to state a claim for relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  Next, the Court "peel[s] away those allegations that are no more than conclusions and thus

not entitled to the assumption of trust." *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### B.   Heightened Pleading Standard Under Fed. R. Civ. P. 9(b)

A plaintiff alleging fraud, whether it be a violation of the common law or the NJCFA, must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *Frederico v. Home Depot,* 507 F.3d 188, 200–03 (3d. Cir.2007). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

As interpreted and applied by the Third Circuit, Rule 9(b) requires that plaintiffs plead the "first paragraph of any news story…the who, what, when, where, and how." *In Re Supreme Specialities, Inc. Securities Litigation*, 438 F.3d 256, 276 (3d Cir. 2006), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, L.T.D.*, 551 U.S. 308, 322-323 (2007); *see also Frederico,* 507 F.3d at 200 (holding that Rule 9(b) requires a party alleging fraud to state the circumstances of the alleged fraud "with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." (internal quotations omitted)).

### IV.   Hoffman's Supplemental Declaration

A party may not amend his pleadings by including additional factual assertions in his brief. *Penn ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir.1988); *Hart*

*v. Electronic Arts, Inc.*, 740 F.Supp.2d 658, 663 (D.N.J. 2010)(Wolfson, J.).  A party also may not amend his complaint through a declaration, affidavit, or certification. *See Del Sontro v. Cendant Corp., Inc.,* 223 F.Supp.2d 563, 580-81 (D.N.J.2002) (Walls, J.); *see also McArdle v. Tronetti,* 961 F.2d 1083, 1089 (3d Cir.1992) ("[D]efects in [a] complaint clearly [can] not be remedied by [an] affidavit.").

Attached to Hoffman's opposition brief is a declaration containing new factual information relevant to the choice of law analysis in this matter. (D.E. 25-1, ("Hoffman Decl."); D.E. 25 ("Opposition Brief"), at 6.)  These additional facts were not included in or made reference to in Hoffman's complaint, and therefore, the Court may not consider them in deciding the motion.  However, Hoffman asserts that this declaration "is offered solely to demonstrate that NILT's request is premature and to demonstrate that Plaintiff's complaint can be amended with additional allegations supporting application of New Jersey law."  (Opposition Brief, at 6.)   Relying on this new information, Hoffman contends that "[a]ll aspects of the transaction, from start to finish, occurred in New Jersey."  (Hoffman Decl. ¶ 2.)   Thus, Hoffman has not requested that the Court rule on these facts, but rather, consider them in determining whether to permit amendment of his complaint.

"[I]f a complaint is vulnerable to [Federal Rule of Civil Procedure] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 256 n. 14 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 236

Case 2:19-cv-01046-KSH-CLW   Document 46   Filed 06/01/20   Page 9 of 18 PageID: 406


(3d Cir. 2008) (citation omitted)). This rule applies "even if the plaintiff does not seek leave to amend." *Id.* at 245. A claim is futile if the "complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (quoting *In re Burlington Coat Factory,* 114 F.3d at 1434). "The standard for assessing futility is the 'same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

NILT notes that, "[p]ursuant to the Court's Scheduling Order, the time for amendment of pleadings has expired." (D.E. 28 ("Reply Brief"), at 1 n.1.) However, it has brought a 12(b)(6) motion to dismiss, and thus, the Court must consider whether a curative amendment is appropriate. To that end, the Court must consider whether such an amendment to the complaint would be futile, and if needed, may consider these new allegations to do so. *See Hart v. Elec. Arts, Inc.*, 740 F.Supp.2d 658, 663 (D.N.J. 2010) (Wolfson, J.).[5]

## V.   Discussion

The Court finds the ascertainable loss requirement dispositive of Hoffman's motion, and begins (and of necessity, ends) there.

---

[5] In the declaration, Hoffman elaborates upon the vehicle's connection to New Jersey, noting that he leased it through a New Jersey based third party auto broker and conducted all relevant transactions within the state. (*Id.* ¶¶ 3-8.) Because the Court need not reach the choice of law analysis to dismiss this claim, however, the new information Hoffman has provided is minimally relevant.

## A.   <u>Ascertainable Loss</u>

To state a claim under the NJCFA, a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss.  *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (citations omitted); *DeLuca v. CitiMortgage*, 543 F. App'x 194, 196 n.2 (3d Cir. 2013).  The NJCFA "contains its own standing requirement."  *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 360 (D.N.J. 2006) (Hillman, J.).  It provides that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act…may bring an action…in any court of competent jurisdiction."  N.J.S.A 56:8–19.  Thus, to bring a private cause of action a plaintiff must demonstrate ascertainable loss.  *D'Agostino v. Maldonado*, 216 N.J. 168, 185 (2013).

The NJCFA does not define "ascertainable loss," nor is there legislative history "that sheds direct light on those words."  *See Thiedemann v. Mercedes–Benz USA, LLC,* 183 N.J. 234, 248 (2005) (citation omitted).  However, the New Jersey Supreme Court has instructed that "a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." *Id.*  "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable," and, thus, to raise a genuine dispute, "the plaintiff must proffer evidence of loss that is not hypothetical or illusory."  *Id.; Lee v. Carter-Reed Co., LLC,* 203 N.J.

496, 522 (2010). Ascertainable loss occurs "when a consumer receives less than what was promised." *Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002). "[I]t need not yet have been experienced as an out-of-pocket loss to the plaintiff…An 'estimate of damages, calculated within a reasonable degree of certainty' will suffice to demonstrate ascertainable loss.'" *Thiedmann*, 183 N.J. at 248-49 (citing *Cox v. Sears Roebuck, & Co.*, 138 N.J. 2, 22-23 (1994).

In the present matter, Hoffman alleges to have suffered an ascertainable loss based on the $1,194.00 end of lease charge assessed against him, the $182.00 he spent in filing fees to bring his claim, and the "several hours in time to address the fraudulent 'excessive wear and use' charges." (SAC ¶¶18.)

### 1.   *Excess Wear & Use Charges*

NILT argues that Hoffman's complaint does not establish ascertainable loss because, as Hoffman himself concedes, he was never actually required to pay the $1,194.00 end of lease charge. (Moving Brief, at 15.) Hoffman did not pay the charge when it was requested of him in September 2018 and again in October 2018, and then, on December 5, 2018, NILT waived the charge. (Renewed End of Lease Liability Statement.) NILT therefore argues that "[m]erely being charged an allegedly unauthorized fee is insufficient, in and of itself, to constitute actual loss." (Moving Brief, at 15.)

NILT refers to two cases, *DeHart v. U.S. Bank*, 811 F.Supp.2d 1038 (D.N.J. Aug. 18, 2011) (Simandle, J.) and *Mattson v. Aetna Life Ins. Co.*, 124 F.Supp.3d 381 (D.N.J.

Aug. 31, 2015) (Irenas, J.), *aff'd*, 653 F.App'x 145 (3d Cir. 2016) to support its argument that Hoffman did not suffer an ascertainable loss.

In both cases, the plaintiffs attempted to rely, albeit unsuccessfully, on the holding in *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994). In *Cox*, the plaintiff contracted with defendant Sears for kitchen renovations. *Id.* at 7. Sears' workmanship was defective and the estimated cost of repairs was in the thousands of dollars. *Id.* at 10. Although plaintiff had not paid for the repairs at the time of suit, the court still found there to be an ascertainable loss, stating that a "victim is not required actually to spend the money for repairs before becoming entitled to press a claim." *Id.* at 22. Moreover, because the "debt was presumptively collectible prior to the lawsuit, and Sears filed a counterclaim demanding payment of the full contract price[,]" the court concluded that "an improper debt or lien against a consumer-fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act." *Id.* at 23.

Both *Dehart* and *Mattson* rejected the "assertion[] that *Cox* held CFA plaintiffs need not allege that they suffered any monetary loss." *Mattson*, 124 F. Supp. 3d at 392 n. 2 (citing *Dehart*, 811 F.Supp.2d at 1050). In *DeHart,* plaintiffs were charged improper fees to reinstate and pay off their mortgage but were ultimately never required to pay them. The *DeHart* plaintiffs argued that, per *Cox*, being charged an improper debt was sufficient to establish ascertainable loss and that they need not plead that they had actually paid towards the false debt. *De Hart*, 811 F.Supp.2d at 1050. Judge Simandle

rejected this reading of *Cox* and distinguished these plaintiffs, finding that because plaintiffs "have not paid for anything and have not alleged that they will be obligated to pay anything improper in the future," they had not stated a claim for relief under the NJCFA. *Id.*

In *Mattson*, the plaintiffs filed a class action alleging that their health care provider improperly demanded payment of certain hospital bills.   124 F.Supp.3d. at 384. Plaintiffs brought NJCFA claims against Aetna and its insurance claims recovery provider after receiving notice of Aetna's lien against them. The Court found that plaintiffs had not suffered an ascertainable loss because the lien was not collectible and never charged to their account. Neither defendant had filed a lien against plaintiffs' property and thus, they "suffered in no discernible way. Simply put, the alleged harm in this case is illusory."  *Id.* at 392.  Relying on these examples, NILT maintains that Hoffman's "allegation that he was charged a wrongful debt does not rise to the level of suffering an ascertainable loss."  (Moving Brief, at 16.)

In response, Hoffman focuses on the timing of the excess wear charge.  He argues that because the $1,194.00 charge was not "zeroed out" until after he brought his initial claim in Superior Court of New Jersey, and therefore was "presumptively collectible at the time he filed suit," he has sufficiently alleged an ascertainable loss. (Opposition Brief, at 10.)

Hoffman cites to *Cox* and argues that a consumer need not actually pay a debt to assert a violation of the CFA.  *Cox* 138 N.J at 10.  He distinguishes *DeHart*, where

13

the fees were never actually assessed against the plaintiffs and thus never became debts, *DeHart*, 811 F.Supp.2d at 1050, from the present case where the excess wear and use charges were actually assessed against him and thus "became part of his indebtedness." (Opposition Brief, at 11.)  Hoffman further notes that "NILT threatened to 'take action' against [him] for non-payment [ ] and the charges were 'presumptively collectible.'" (*Id.*) Hoffman therefore contends that the $1,194.00 is clearly ascertainable and cannot be disregarded because "NILT tried to 'pick off' [his] claims, after the fact, by allegedly waiving the charges after [he] filed suit." (*Id.*)  He argues that he cannot be denied standing, "which is to be determined at the time of the suit's commencement." (*Id.*)

The order of events is not in dispute.  NILT levied an excess wear and use charged against Hoffman, he filed a lawsuit in state court sounding in breach of contract and fraud, NILT waived the charge, and Hoffman amended his complaint and instituted a NJCFA class action. (SAC ¶¶ 13-18; Renewed End of Lease Liability Statement; D.E. 1.)  Therefore, the question before the Court is whether a charge assessed against Hoffman, since waived, constitutes ascertainable loss.

At the time Hoffman instituted his action in state court, there was a debt assessed against him—one that he alleges was improper.  However, as in *Dehart* and *Mattson*, Hoffman has not paid this charge, nor, because NILT waived it, "will [he] be obligated to pay anything improper in the future." *DeHart*, 811 F.Supp.2d at 1050.  The Court cannot dispense of the standing requirement in the statute; the facts controlling this motion are found in the second amended complaint and they do not demonstrate that

Hoffman has suffered any loss based on excess use and wear charges. Because Hoffman has not paid the charges assessed against him, nor can he be expected to pay anything improper in the future, Hoffman has not suffered an ascertainable loss as the NJCFA requires.

### 2.    *Court Filing*

Hoffman also maintains that the $182.00 he paid in filing fees and the time he spent working on his case constitute ascertainable loss. He contends that he filed suit to "protect himself from the fraudulent charges" because NILT had threatened to "take action" against him if he did not pay the fees. (Opposition Brief, at 10.)

Hoffman relies on *BJM Insulation & Const., Inc. v. Evans* to support his claim that attorneys' fee and costs "associated with raising a meritorious claim" are "as ascertainable a loss under the Act [as] an obligation owed by the claimant…specially treated only in the respect that it is not subject to the trebling for which other losses qualify." 287 N.J. Super. 513, 517 (App. Div. 1996). NILT argues that Hoffman "conflates the requirement of pleading ascertainable loss with the statutory entitlement to fees in the event [that] a successful defense is asserted under the NJCFA." (Moving Brief, at 16-17.)

The Court agrees with NILT; neither the court filing fees nor the time he spent drafting his complaint qualify as ascertainable losses under the statute. In *BJM*, the defendant prevailed on the merits of her NJCFA claim and was permitted to seek attorneys' fees, despite not suffering ascertainable loss, because the trial court did not

require her to pay plaintiff's bill. 287 N.J. Super. at 516-17; *see also Gemini Restoration Inc. v. Leone*, 2012 WL 3140244 (N.J. Super Ct. App. Div Aug. 3, 2012). The Appellate Division stated that there was "no distinction between 'technical' violations [of the NJCFA, like defendant's claim,] and more 'substantive' ones." *BJM*, 287 N.J. Super at 518. In contrast, Hoffman argues that his filing fees constitute ascertainable loss even though he did not expend them in pursuit of a meritorious claim. *See Wenger v. Cardo Windows, Inc.*, 2009 WL 649458, at *6–7 (N.J. Super. Ct. App. Div. Mar. 16, 2009), *appeal granted in part, cause remanded*, 201 N.J. 496, 992 A.2d 791 (2010) (refusing to consider attorneys' fees as part of the party's ascertainable loss where plaintiff did not prevail on its NJCFA claim). Significantly, however, courts no longer award attorneys' fees for "technical" violations of the Act; the costs of suit and attorneys' fees are only reimbursable under the NJCFA as a "consequence of a proven Consumer Fraud Act violation where there is an ascertainable loss." *Spade v. Select Comfort Corp.*, 2019 WL 885639, at *10 (D.N.J. Jan. 31, 2019), *report and recommendation adopted*, 2019 WL 861267 (D.N.J. Feb. 21, 2019) (Arpert, J.) ("Because attorney['s] fees are recoverable only upon proof of ascertainable loss… attorney['s] fees do not constitute ascertainable loss.") Because Hoffman cannot demonstrate an ascertainable loss, he cannot recover attorneys' fees and filing costs, and thus, cannot rely on such expenses to satisfy the ascertainable loss requirement. *See Perez v. Professionally Green, LLC*, 215 N.J. 388, 401-409 (2013) (holding that a plaintiff can only collect attorneys' fees if she demonstrates a bona fide claim of ascertainable loss that can withstand summary judgment).

Furthermore, in holding that counsel fees are not considered part of the amount in controversy when calculating the jurisdictional limit, the New Jersey Supreme Court explained that attorneys' fees, filing fees, and the costs of suit are "non-damages" that are separate and apart from the "ascertainable damages" required to establish a NJCFA claim. *See Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 140 (1999). The Court focused on the structure of the statutory language: "It broadly distinguishes between damages on one hand and non-damages on the other hand. The damages are the 'ascertainable loss'…which is to be trebled…The non-damages are reasonable attorneys' fees, filing fees, and reasonable costs of the suit…the costs that a litigant incurs in suing for a Consumer Fraud Act violation." *Id.* Although the court was discussing a different issue, its analysis is germane to the dispute here. Hoffman's costs in bringing suit and paying to file his claim are "non-damages," distinct from any quantifiable and measurable actual damages, and Hoffman cannot manufacture ascertainable loss out of them.[6]

---

[6] Although *Jarzyna v. Home Properties, L.P.* involved an alleged violation of the Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") rather than the NJCFA, the Eastern District of Pennsylvania relied on similar analysis by the Pennsylvania Supreme Court when faced with this issue. 185 F. Supp. 3d 612, 617–18 (E.D. Pa. 2016), *aff'd*, 783 F. App'x 223 (3d Cir. 2019).

> [T]he state's high court held that the 'plain language' of the UTPCPL 'makes it readily apparent that the General Assembly deemed ascertainable losses and attorneys' fees to be distinct items for redress.'…Moreover, the court found, holding otherwise 'would allow a plaintiff to manufacture the 'ascertainable loss' required to bring a private UTPCPL claim simply by obtaining counsel to bring a private UTPCPL claim'—an unreasonable result. *Id.* (citing *Grimes v. Enterprise Leasing Co. of Philadelphia, LLC,* 105 A.3d 1188 (Pa.2014) (per curiam).

Because Hoffman has failed to plead ascertainable loss, an essential element of a NJCFA claim, the Court need not address the remaining requirements under the statute. Because the pleaded facts dictate that Hoffman cannot satisfy an essential element of his NJCFA claim,  permitting him leave to amend would be futile.

**VI.**   <u>**Conclusion**</u>

For the foregoing reasons, the Court grants defendant's motion to dismiss the complaint. An appropriate order will follow.

/s/ Katharine S. Hayden

Date: June 1, 2020                                              Katharine S. Hayden, U.S.D.J.